UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IRIS N. PEREZ,

                    Plaintiff,

          -v.-

DOLGEN CORP. OF NEW YORK INC.; DOLGEN
CORP, LLC; DOLLAR GENERAL STORE #19027;
DOLLAR GENERAL CORPORATION; and
DOLGEN NEW YORK, LLC,

                    Defendants.

---

22 Civ. 4324 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

     Plaintiff Iris N. Perez brings this action against Defendants Dolgen Corp.
of New York Inc.; Dolgen Corp, LLC; Dollar General Store #19027; Dollar
General Corporation; and Dolgen New York, LLC (together, "Defendants"), in
connection with a trip-and-fall incident that occurred at Defendants' Dollar
General store located at 2500 White Plains Road in the Bronx (the "Store").
Discovery has concluded, and now before the Court is Defendants' motion for
summary judgment.  Defendants maintain that the material facts of this case
are undisputed, and that on those facts, Defendants owed no legal duties to
Plaintiff upon which liability could be based, as the handbasket over which
Plaintiff tripped was open and obvious, and not inherently dangerous.  In the
alternative, Defendants argue that Plaintiff cannot establish that Defendants
breached any duty owed to Plaintiff, as the record does not support a finding
that Defendants either created or had notice of the conditions that caused

Plaintiff's fall.  For the reasons set forth herein, the Court agrees on both grounds, and therefore grants Defendants' motion for summary judgment.

## BACKGROUND[1]

### A.    Factual Background

Plaintiff Iris N. Perez is a resident of the Bronx.  Defendants are corporate entities that own and operate the Dollar General store located at 2500 White Plains Road in the Bronx.  (Dkt. #4).[2]  Relevant to the instant dispute, Defendants provide yellow plastic handbaskets for customers to use as they are shopping in the Store.  (Def. 56.1 ¶¶ 15-16).  In particular, and as depicted in the below image, these handbaskets "measure approximately 17 inches wide,

---

[1]    The facts set forth in this Opinion are drawn from the parties' submissions in connection with Defendants' motion for summary judgment.  The Court primarily sources facts from Defendants' Local Rule 56.1 Statement ("Def. 56.1" (Dkt. #34)); Plaintiff's Local Rule 56.1 Counter-Statement and Response to Defendants' 56.1 Statement ("Pl. 56.1" (Dkt. #36)); and Defendants' Response to Plaintiff's 56.1 Statement ("Def. Opp. 56.1" (Dkt. #39)).

Citations to a party's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein.  Where a fact stated in a movant's Rule 56.1 Statement is supported by evidence and controverted only by a conclusory statement by the opposing party, the Court finds that fact to be true.  *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be submitted by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion for summary judgment as "Def. MSJ Br." (Dkt. #35), and to certain exhibits attached to the Declaration of David M. Katz in Support of Defendants' Motion for Summary Judgment (cited using the convention "Katz Decl., Ex. [ ]"); to Plaintiff's memorandum of law in opposition to Defendants' motion for summary judgment as "Pl. Opp." (Dkt. #38); and to Defendants' reply as "Def. Reply" (Dkt. #41).

[2]    Defendants maintain, and Plaintiff does not dispute, that none of the Defendants is a citizen of New York for the purposes of diversity jurisdiction.  (Dkt. #1 (Notice of Removal) at 4-6).

12 inches deep, and 9 inches tall[;] are rectangular[;] and have bright yellow baskets with black handles."  (Def. Opp. 56.1 ¶ 16).



(Katz Decl., Ex. 8).

When they are finished shopping, customers often leave these handbaskets on the floor in the vicinity of the Store's checkout counters.  (Pl. 56.1 ¶ 17).  There is a row of columns next to the checkout counters, and, in Plaintiff's experience, customers typically discard their handbaskets to the right of these columns, on the side closer to the checkout counters.  (*Id.* ¶¶ 25-26).  The only official receptacle for the handbaskets is positioned close to the Store's entrance, adjacent to the checkout counters.  (*Id.* ¶ 18; Dkt. #33 (Declaration of Crismailin Mercedes ("Mercedes Decl.")) ¶ 8).

On or about May 6, 2019, at approximately 6:15 p.m., while carrying a bag of brown sugar out of the Store, Plaintiff tripped over a handbasket that

was left on the floor of the checkout area.  (Def. 56.1 ¶¶ 1-2).  In particular, after Plaintiff checked out at cash register number three, she began walking toward the Store's exit.  (*Id.* ¶ 2; Pl. 56.1 ¶ 27).  Plaintiff recalls that, at that time, there was "[a]n obese person at cash register number [two]," with at least one customer also in the queue for the registers.  (Pl. 56.1 ¶¶ 23-24).  After having taken approximately four steps away from cash register number three, Plaintiff tripped and fell on a handbasket that was sitting on the floor to the left of the columns.  (*Id.* ¶ 27).  Plaintiff maintains that, at the time of her fall, she was focused on avoiding contact with the person of larger build at cash register number two, as well as with other customers that were approaching the checkout counters.  (*Id.* ¶ 28).  Plaintiff first saw the handbasket only after she had tripped and fallen.  (Def. 56.1 ¶¶ 9-10).

When the incident occurred, Crismailin Mercedes, the manager on duty, heard the noise occasioned by Plaintiff's fall and ran to the front of the Store.  (Katz Decl., Ex. 9 (Transcript of Deposition of Crismailin Mercedes ("Mercedes Depo.")) at 17:12-22, 21:2-5).  Upon arrival, Mercedes noticed a handbasket on the ground, "away from the checkout counter."  (Pl. 56.1 ¶ 14; Mercedes Depo. 20:23-25 (testifying that there was "just one" handbasket on the floor in the checkout area)).  Mercedes also witnessed the Plaintiff and one of the Store's cashiers discussing the incident, but recalled that there were no other customers waiting in line to check out at that time.  (*Id.* at 18:12-16, 20:22-25, 35:22-36:7).

Thereafter, Plaintiff left the Store and walked, in pain, to her husband's truck, which was parked outside. (Katz Decl., Ex. 7 (Transcript of Deposition of Iris N. Perez ("Perez Depo.")) at 55:15-56:6). When Plaintiff's husband saw that she was in pain, he went into the Store, spoke with an employee, and took two photographs of the checkout area where Plaintiff fell. (*Id.* at 33:22-24, 56:11-14, 57:14-25, 58:2-5; *see also* Katz Decl., Ex. 8 (containing the photographs introduced in Plaintiff's Deposition as Exhibit A and Exhibit B)).

## B.    Procedural History

On January 24, 2022, Plaintiff filed a personal injury action against Defendants Dolgen Corp. of New York, Inc.; Dolgen Corp. LLC; Dollar General Store #19207; and Dollar General Corporation in the Supreme Court of the State of New York, Bronx County; the action was assigned Index No. 801137/2022E. (*See* Dkt. #1 at 1-2). Plaintiff subsequently filed an amended complaint on February 24, 2022, pressing the same allegations, but adding Dolgen New York, LLC as a Defendant. (*Id.* at 2). Defendants filed their answer on March 25, 2022. (*Id.*).

On May 25, 2022, Defendants filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, removing the matter to this District. (*See* Dkt. #1).[3] On August 1, 2022, the parties filed a letter motion to adjourn the

---

[3]    Plaintiff's Bill of Particulars alleges $50,631.80 in lost income and medical expenses, plus continuing medical expenses. (*See* Katz Decl., Ex. 4). When considered alongside the evidence of Plaintiff's injuries, her testimony regarding her regular medical treatment (*see* Katz Decl., Ex. 7 (Transcript of Deposition of Iris N. Perez ("Perez Depo.")) at 66:23-68:10; 71:24-73:4), and her demand for compensatory damages addressing her "pain, shock and mental anguish" (*see* Katz Decl., Ex. 1 (Complaint) ¶ 62; Perez Depo. 82:7-88:24), the Court finds there to be a reasonable probability that Plaintiff is seeking damages in excess of $75,000, necessary to sustain the Court's subject-matter

initial pretrial conference *sine die*, along with a proposed case management

plan. (Dkt. #8-9). That same day, the Court granted the parties' request and

entered the case management plan. (Dkt. #10-11). On November 11, 2022, at

the parties' request, the Court extended the deadline for the completion of fact

discovery to January 3, 2023; later, at the parties' renewed insistence, the

Court further extended the deadline for the completion of fact discovery to

January 27, 2023. (Dkt. #14, 16). On January 27, 2023, the parties appeared

before the Court for a post-fact discovery conference. (*See* January 27, 2023

Minute Entry).

 After providing the parties with an extension of time to complete expert

discovery on February 15, 2023 (Dkt. #19), the Court referred the case to the

District's Mediation Program on March 16, 2023 (Dkt. #20-22). On May 12,

2023, upon notice that the mediation had been unsuccessful, the Court

ordered the parties to file a status update, including whether the parties

intended to move for summary judgment. (Dkt. #27). On May 18, 2023, the

parties submitted a joint status letter indicating Defendants' intent to move for

summary judgment (Dkt. #28), and later that same day, Defendants filed a pre-

motion letter seeking leave to move for summary judgment (Dkt. #29). Because

---

jurisdiction. *See Kozlova* v. *Whole Foods Mkt. Grp., Inc.*, No. 20 Civ. 6025 (RPK) (RLM), 2021 WL 4755891, at *3 (E.D.N.Y. Jan. 24, 2021) (considering injuries enumerated in plaintiff's bill of particulars and finding such injuries "show[] a reasonable probability that plaintiff's damages exceed $75,000), *report and recommendation adopted in part*, No. 20 Civ. 6025 (RPK), 2021 WL 4398234 (E.D.N.Y. Sept. 26, 2021); *Scottsdale Ins. Co.* v. *Acceptance Indem. Ins. Co.*, No. 19 Civ. 7294 (RA), 2019 WL 6498316, at *4 (S.D.N.Y. Dec. 3, 2019) (finding reasonable probability that amount in controversy exceeded $75,000 where plaintiff listed in bill of particulars injuries to cervical spine, lumbar spine, left ankle and left shoulder).

the Court had already held a post-fact discovery conference, it dispensed with its usual requirement of holding a pre-motion conference, and instead set a briefing schedule for Defendants' contemplated motion.  (Dkt. #30).  Briefing proceeded without incident:  On June 16, 2023, Defendants filed their opening brief in support of their motion for summary judgment (Dkt. #31-35 (Def. Br. and supporting papers)); on July 15, 2023, Plaintiff filed her response in opposition (Dkt. #36-38 (Pl. Opp. and supporting papers)); and on July 28, 2024, Defendants filed their reply (Dkt. #40-41 (Def. Reply and supporting declaration)).

## DISCUSSION

### A.    Applicable Law

#### 1.    Motions for Summary Judgment Under Rule 56

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986).[4]  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could

---

[4]    The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact.  *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination.").  This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys* v. *City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005).

"It is the movant's burden to show that no genuine factual dispute exists" and a court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Vt. Teddy Bear Co., Inc.* v. *1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). If the movant has met its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" and, toward that end, "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations and quotation marks omitted). The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986). Furthermore, "[m]ere conclusory allegations or denials … cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher* v. *Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted)).

This case invokes the Court's diversity jurisdiction, and the parties do not dispute that New York substantive law governs the resolution of Plaintiff's claims, as detailed below. However, the Second Circuit "ha[s] determined under Fed. R. Civ. P. 56 [] that 'the evidentiary burdens that the respective

parties will bear at trial guide district courts in their determination of summary judgment motions.'" *Tenay* v. *Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 12-13 (2d Cir. 2008) (summary order) (quoting *Brady* v. *Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1998)); *see also Castellanos* v. *Target Dep't Stores, Inc.*, No. 12 Civ. 2775 (GWG), 2013 WL 4017166, at *7 (S.D.N.Y. Aug. 7, 2013) ("[B]ecause the evidentiary burden that the parties bear in a summary judgment motion is procedural, the federal standard controls.").

Of note, the federal standard governing the parties' evidentiary burdens is more permissive than its New York state analogue. "Under the law of New York State, … a defendant in a personal injury action may not satisfy its summary judgment burden 'merely by pointing to gaps in the plaintiff's case,' but rather must submit affirmative evidence in support of its position." *Sauro* v. *Costco Wholesale Corp.*, No. 18 Civ. 2091 (SJF) (AKT), 2019 WL 3046852, at *6 (E.D.N.Y. May 29, 2019) (quoting *Davranov* v. *470 Realty Assocs., LLC*, 911 N.Y.S.2d 912, 912 (2d Dep't 2010)), *report and recommendation adopted*, No. 18 Civ. 2091 (SJF) (AKT), 2019 WL 3037069 (E.D.N.Y. July 10, 2019). By contrast, under the federal standard, a "[d]efendant's summary judgment burden is satisfied if it can point to 'an absence of evidence to support an essential element' of [the] [p]laintiff's negligence claim." *Id.* (quoting *Doona* v. *OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 399 (E.D.N.Y. 2010)).

## 2.   Elements of a Negligence Claim Under New York Law

Under New York law, the elements of a negligence claim are (i) a duty owed by the defendant to the plaintiff, (ii) a breach thereof, and (iii) injury

proximately resulting from such a breach. *Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006). Defendants have not raised the issue of proximate cause in moving for summary judgment. Rather, the parties focus on the interrelated issues of duty and breach, as discussed below.

Two duties are implicated in trip-and-fall premises liability cases under New York law: a landowner's specific "duty to warn of [a] hazard," and its general "duty to maintain the premises in a reasonably safe condition." *Borley* v. *United States*, 22 F.4th 75, 82 (2d Cir. 2021) (internal quotation marks omitted) (citing *Aberger* v. *Camp Loyaltown, Inc.*, 142 N.Y.S.3d 528, 532 (1st Dep't 2021)). While the former emerges from the latter, the two duties are "analytically distinct," such that liability may be found for failure to maintain reasonably safe premises, "even where the obviousness of the risk negates any duty to warn." *Cohen* v. *Shopwell, Inc.*, 765 N.Y.S.2d 40, 42 (1st Dep't 2003); *see also Cupo* v. *Karfunkel*, 767 N.Y.S.2d 40, 42 (2d Dep't 2003) ("The scope of a landowner's duty to maintain property in a reasonably safe condition may also include the duty to warn of a dangerous condition.").

Neither duty is limitless, however. Under New York law, "a landowner has no duty to protect or warn against an open and obvious condition which, as a matter of law, is not inherently dangerous." *Varon* v. *N.Y.C. Dep't of Educ.*, 998 N.Y.S.2d 433, 434 (2d Dep't 2014). A condition that is both (i) open and obvious and (ii) not inherently dangerous implicates neither the specific duty to warn, as "a person entering the property is just as aware as the landowner of the condition of the property and the risks associated with it," nor the general

10

duty of care, as such a condition "cannot fairly be attributed to any negligent maintenance of the property" on the landowner's part.  *Cupo*, 767 N.Y.S.2d at 43.  While these considerations are often fact-specific, the Appellate Division has observed that courts are not "precluded from granting summary judgment to a landowner on the ground that the condition complained of by the plaintiff was both open and obvious and, as a matter of law, was not inherently dangerous."  *Id.*

Moving to the question of breach, "[t]o impose liability upon a defendant in a trip-and-fall action, there must be evidence that a dangerous or defective condition existed, and that the defendant either created the condition or had actual or constructive notice of it."  *Habecker* v. *KFC U.S. Props., Inc.*, 928 F. Supp. 2d 648, 654 (E.D.N.Y. 2013) (quoting *Sermos* v. *Gruppuso*, 944 N.Y.S.2d 245, 246 (2d Dep't 2012) (internal quotation marks omitted)).  "Whether a dangerous or defective condition exists on the property of another so as to create liability depends on the circumstances of each case and is generally a question of fact for the jury."  *Id.* (quoting *Delaney* v. *Town Sports Int'l*, 930 N.Y.S.2d 247, 248 (2d Dep't 2011) (internal quotation marks omitted)). Summary judgment is nevertheless appropriate where "the record contains no evidence establishing a genuine issue of material fact with respect to [affirmative creation], actual notice[,] or constructive notice."  *Tenay*, 281 F. App'x at 13.

**B.    Plaintiff Has Not Identified a Genuine Factual Dispute as to Whether Defendants Breached Any Duty to Plaintiff**

Defendants maintain that summary judgment is appropriate, as the handbasket over which Plaintiff tripped was both open and obvious, and not inherently dangerous, thereby placing the condition outside the scope of both their specific duty to warn and their more general duty of care.  (*See* Def. Br. 14-16; Def. Reply 6-8).  In the alternative, Defendants argue that a reasonable jury could not find that they breached their duty of care, as the record cannot establish that Defendants either created the condition or had actual or constructive notice of it.  (*See* Def. Br. 17-24; Def. Reply 2-6).  The Court begins with Defendants' duty to warn, then considers Defendants' duty of care.

**1.    Plaintiff Cannot Establish That Defendants Breached Their Duty to Warn**

Under New York law, "[a] landowner ... has the duty to warn of potentially dangerous conditions that are not readily observable."  *McDermott* v. *Santos*, 98 N.Y.S.3d 646, 649 (2d Dep't 2019) (citations omitted).  Conversely, "where a condition was both [i] open and obvious and [ii] not inherently dangerous ... a court is not precluded from granting summary judgment" in favor of the landowner.  *Niles* v. *1109-1113 Manhattan Ave. Partners, LLC*, No. 13 Civ. 5427 (NGG), 2015 WL 6674833, at *4 (E.D.N.Y. Oct. 30, 2015) (citing *Cupo*, 767 N.Y.S.2d at 43).  As set forth below, the Court finds that Plaintiff has not met her burden to identify any genuine dispute of material fact sufficient to rebut the only conclusion that can fairly be drawn from the record:

that the handbasket in the checkout area constituted an open and obvious
condition that was not inherently dangerous.

      **a.**     **Plaintiff Cannot Defeat Summary Judgment on the Open
and Obvious Nature of the Handbasket**

           **i.**     **The Location of the Handbasket Was Open and
Obvious**

Under New York law, a condition is open and obvious when it is "readily
observable by the reasonable use of one's senses." *Benjamin* v. *Trade Fair
Supermarket, Inc.*, 989 N.Y.S.2d 872, 873 (2d Dep't 2014).  Put differently, "[f]or
a condition to be open and obvious as a matter of law, it must be one that
could not be overlooked by any observer reasonably using his or her ordinary
senses." *Silvestri* v. *Kohl's Dep't Stores, Inc.*, No. 19 Civ. 10550 (KMK), 2022
WL 2971988, at *5 (S.D.N.Y. July 27, 2022) (internal quotation marks omitted)
(citing *Garrido* v. *City of New York*, 779 N.Y.S.2d 208, 209 (1st Dep't 2004)).
"While the issue of whether a hazard is latent or open and obvious is generally
fact-specific and thus usually a jury question, a court may determine that a
risk was open and obvious as a matter of law when the established facts
compel that conclusion, and may do so on the basis of clear and undisputed
evidence." *Tagle* v. *Jakob*, 97 N.Y.2d 165, 169 (2001) (internal citations
omitted).  Such is the case here.

The handbasket in question is a bright yellow rectangular basket,
"approximately 17 inches wide, 12 inches deep, and 9 inches tall, … with black
handles."  (Def. Opp. 56.1 ¶ 16).  These physical characteristics render the
handbasket conspicuous to store patrons, especially given the contrast of its

yellow color with the black merchandise shelves lining the aisles, and the grey floor of the Store.  (*See* Katz Decl., Ex. 8).  *See Gallo* v. *Hempstead Turnpike, LLC*, 948 N.Y.S.2d 660, 661 (2d Dep't 2012) (finding a wheel stop, "painted yellow in contrast to the color of the sidewalk to which it was affixed, … was readily observable to those employing the reasonable use of their senses and, thus, open and obvious" as a matter of law); *Stern* v. *Costco Wholesale*, 882 N.Y.S.2d 266, 267 (2d Dep't 2009) (finding flatbed shopping cart, "painted bright orange," to be "open and obvious"); *Chaney* v. *Starbucks Corp.*, 115 F. Supp. 3d 380, 387 (S.D.N.Y. 2015) ("Virtually any patron in [plaintiff's] position would have readily noticed the [laptop] charger by making reasonable use of [her] senses, as there was a stark color contrast between the white charger and the orange tile floor." (internal quotation marks omitted)); *Neiderbach* v. *7-Eleven, Inc.*, 868 N.Y.S.2d 91, 92 (2d Dep't 2008) (finding a "blue plastic crate … about 15 inches high and 12 inches wide" to be an open and obvious condition).  The obviousness of the handbasket is further underscored by the presence of like handbaskets throughout the Store.  *See Schulman* v. *Old Navy/The Gap, Inc.*, 845 N.Y.S.2d 341, 342 (1st Dep't 2007) (finding that a bracket, "even if obscured, was obvious because of the presence of like brackets and racks throughout the store").  Accordingly, the Court finds that the conspicuous physical characteristics of the handbasket, in contrast to its surroundings, render it readily apparent to a reasonable observer and thus an open and obvious condition.

14

### ii. Plaintiff Cannot Support a Finding That She Was Distracted

Plaintiff does not dispute the foregoing conclusion, *i.e.*, that the handbasket was open and obvious. Rather, Plaintiff asserts that "[a] hazard that is open and obvious may be rendered a trap if the condition is obscured or the Plaintiff's attention is otherwise distracted." (Pl. Opp. 4 (first citing *Gradwohl* v. *Stop & Shop Supermarket Co., LLC*, 896 N.Y.S.2d 85, 86 (2d Dep't 2010), and then citing *Pirreca* v. *Smithtown Cent. Sch. Dist.*, 171 N.Y.S.3d 375, 375 (2d Dep't 2022))). In particular, Plaintiff maintains that she was distracted by the presence of "[a]n obese person at cash register number [two,]" who "drew [] Plaintiff's attention away from the floor," and thus prevented her from seeing the handbasket. (Pl. 56.1 ¶ 23). On this issue, however, Plaintiff's arguments cannot carry her burden at summary judgment.

First, serious doubt exists as to whether Plaintiff has adduced sufficient evidence to create a genuine factual dispute regarding the presence of any allegedly distracting customer. The Second Circuit instructs that "a dispute about a genuine issue of [] fact occurs 'if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Tarpon Bay Partners LLC* v. *Zerez Holdings Corp.*, 79 F.4th 206, 220 (2d Cir. 2023) (quoting *Aetna Life Ins. Co.* v. *Big Y Foods, Inc.*, 52 F.4th 66, 72 (2d Cir. 2022)). While this evidentiary standard is permissive, the plaintiff must offer more than "a 'scintilla of evidence' supporting her claim," to defeat a motion for summary judgment. *Fincher* v. *Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d

Cir. 2010) (quoting *Anderson*, 477 U.S. at 252)).  Accordingly, "[the] preliminary question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Anderson*, 477 U.S. at 251; *see also Fincher*, 604 F.3d at 727 (quoting same).

In the entirety of the record at summary judgment, Plaintiff relies on one sparse statement in support of her theory of distraction:  Plaintiff recounted, in her deposition, that "[a]t cash register [number two], there was this obese person there, and I think if that person was not there, I would have gone maybe the other way, maybe that way I would not have fallen."  (Perez Depo. 50:19-22).  In her declaration in opposition to Defendants' motion for summary judgment, Plaintiff recasts this speculation more affirmatively, maintaining that she "was [] not looking at the floor for customer[-]placed baskets because [she] was focused on walking around an obese person at cash register [number two]."  (Perez Decl. ¶ 7).

Beyond her cursory deposition testimony and her subsequent affidavit in opposition to summary judgment, Plaintiff does not corroborate her statements on the issue of her distraction with those of any other witness, *e.g.*, those of the individual at cash register number two, or of the other individual that Plaintiff recalls observing waiting in the queue.  (*See* Pl. 56.1 ¶¶ 23-24 (citing only the Perez Decl. and Perez Depo.)).  Nor has Plaintiff supplied any photographic or video evidence of those individuals present at the site of the incident to support

16

her version of events.[5]  And to the contrary, testimony from Mercedes, the on-duty manager and the only other deponent who was present in the Store at or around the time of the incident, indicated that "[t]here was no line" at the checkout area at the time of the incident.  (Mercedes Depo. 35:22-36:7).  While Mercedes was not an eyewitness to the incident itself, she arrived moments after hearing the incident, and testified to her recollection of the scene in the moments after the incident occurred.  (*See id.* at 17:12-21:21 (testifying generally regarding her recollection of the scene of the incident)).  Moreover, Plaintiff's counsel did not raise the issue of the allegedly distracting, "obese" customer in that deposition, nor in the deposition of Defendants' other employee in this case.  (*See generally* Katz Decl., Ex. 10 (Transcript of Deposition of Yesenia Rivera ("Rivera Depo.")) (reflecting no testimony regarding the presence of customers in the checkout area)).  In sum, beyond her own sparse testimony, Plaintiff has otherwise failed to develop any evidentiary record on the issue of the allegedly distracting "obese" customer.

Of course, the Court, at summary judgment, must "construe the evidence in the light most favorable to the [P]laintiff and draw all reasonable

---

[5]    The Court recognizes that, based on testimony by the Store employees, surveillance footage might have existed at the time.  (*See* Katz Decl., Ex. 10 (Transcript of Deposition of Yesenia Rivera ("Rivera Depo")) at 12:3-10, 22:11-17, 25:2-26:8).  Still, the Court notes that there is no reference to specific surveillance footage or other documentary evidence anywhere in the record, beyond the two photographs contained as an exhibit to Defendants' motion for summary judgment.  The Court proceeds, therefore, on that record alone, as it cannot find fault with Defendants' "motion for summary judgment by imagining the possibility that as yet undiscovered facts might rescue [Plaintiff's] claim." *Chaney* v. *Starbucks Corp.*, 115 F. Supp. 3d 380, 391 (S.D.N.Y. 2015) (citing *Meiri* v. *Dacon*, 759 F.3d 989, 998 (2d Cir. 1985) ("A party opposing a motion for summary judgment simply cannot make a secret of [her] evidence until the trial for in doing so [she] risks the possibility there will be no trial.")).

inferences in her favor." *Fincher*, 604 F.3d at 726.  Moreover, "[t]here is nothing … to suggest that [Plaintiff's] affidavit[] alone cannot — as a matter of law — suffice to defend against" such a motion. *Danzer* v. *Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998);[6] *see also Bellamy* v. *City of New York*, 914 F.3d 727, 746 (2d Cir. 2019) ("[A] [] plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact."); *cf. Moll* v. *Telesector Res. Grp., Inc.*, — F.4th —, No. 20-3599, 2024 WL 820179, at *4 (2d Cir. Feb. 28, 2024) (cautioning district courts that "[t]he court's role with respect to such a motion [for summary judgment] is not to resolve disputed questions of fact 'but solely to determine whether, as to any material fact, there is a genuine issue to be tried'" (internal citations omitted)).  These directives, however, do not require

---

[6]     The Second Circuit has observed that this is particularly appropriate "[i]n discrimination cases, [where] the only direct evidence available very often centers on what the defendant allegedly said or did." *Danzer* v. *Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998).  In those circumstances, "the defendant will rarely admit to having said or done what is alleged, and [] third-party witnesses are by no means always available," such that "the issue frequently becomes one of assessing the credibility of the parties," a task unsuitable for the court at summary judgment. *Id.*

The same cannot necessarily be said for trip-and-fall negligence cases, such as the one before this Court, that involve incidents in public settings where direct and circumstantial evidence is more readily available.  As with the surveillance footage, discussed *supra*, the Court recognizes that, while Plaintiff's counsel was aware of potential witnesses, including the cashier at the checkout counter and another individual identified by Plaintiff as being present at the scene of the incident, Plaintiff, for whatever reason, did not introduce any testimony from either individual in connection with the motion for summary judgment. (*See* Katz Decl., Ex. 9 (Transcript of Deposition of Crismailin Mercedes ("Mercedes Depo.")) at 36:17-37:7; Perez Depo. 54:19-55:14).

Ultimately, while the Court does not assess the credibility of Plaintiff's testimony, it must still evaluate that testimony, accepted as true, against the broader record to determine if it provides a sufficient evidentiary basis for a rational jury to find in favor of Plaintiff, as the nonmoving party. *See Gallo* v. *Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." (citing *Dister* v. *Continental Grp., Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988))).

the Court's uncritical adherence to Plaintiff's version of the facts, as the Second Circuit has recognized that summary judgment may be appropriate where a plaintiff relies on her "testimony …[,] largely unsubstantiated by any other direct evidence[,] [which testimony] was 'so replete with inconsistences and improbabilities' that no reasonable juror would undertake the suspension of disbelief necessary to credit [the plaintiff's] allegations." *Jeffreys*, 426 F.3d at 555 (citation omitted).  The circumstances of this case implicate the latter issue, one of improbability.  In particular, the question before the Court is whether a jury could, based exclusively on Plaintiff's recollection that "[she] was focused on walking around an obese person at cash register [number two]," properly find in Plaintiff's favor on the question of her distraction.  (Perez Decl. ¶ 7).

This improbability issue is complicated by the nature of the question, which implicates Plaintiff's allegedly distracted state of mind.  Still, the Second Circuit has observed that even

> when the material fact at issue is an [individual's] intent, motivation, and state of mind … [and] summary judgment should be used sparingly …, a plaintiff must nevertheless offer "concrete evidence from which a reasonable juror could return a verdict in [her] favor," and is not entitled to a trial simply because the determinative issue focuses upon [her] state of mind.

*Dister* v. *Continental Grp., Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (quoting *Anderson*, 477 U.S. at 256); *see also Goenaga* v. *March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("[T]he plaintiff cannot meet [her] burden through reliance on *unsupported* assertions." (emphasis added)).  As is

apparent from the Court's examination of the record, Plaintiff has not identified any concrete evidence, beyond her own testimony, to support her state of mind. Indeed, even in her own declaration, authored in opposition to Defendants' motion for summary judgment, Plaintiff offers no additional details about the allegedly distracting customer — *e.g.*, that individual's gender, physical appearance, or demeanor — leaving the finder of fact no choice but to guess as to the extent to which that customer was distracting based solely on Plaintiff's one-word perception of that individual's weight.  Faced with such a dearth of evidence, the Court maintains serious doubts as to whether Plaintiff has met her burden to create a genuine factual dispute as to the presence of an allegedly distracting customer.  *Gallo* v. *Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("When no rational jury could find in favor of the nonmoving party because the evidence to support [her] case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." (internal citations omitted)).  Ultimately, however, the Court need not resolve that question because, for the reasons set forth below, the fact at issue is not material.  In particular, the Court finds that summary judgment is appropriate inasmuch as the mere presence of another customer in the checkout area is inadequate, on its own, to support a rational juror's finding that Plaintiff was sufficiently distracted to negate the openness and obviousness of the handbasket.

"A material fact is one that would 'affect the outcome of the suit under the governing law.'" *Tarpon Bay Partners*, 79 F.4th at 220 (quoting *Aetna Life*

*Ins. Co.*, 52 F.4th at 72)).  The parties have not provided, nor has the Court identified, any cases discussing, under New York law, distractions arising in circumstances similar to those argued by Plaintiff to this Court.  The Court therefore considers decisions of higher courts in states with similar negligence standards, to see if they prove instructive to the Court's analysis.  Notably, in *Bruns* v. *City of Centralia*, the Supreme Court of Illinois affirmed a lower court's grant of summary judgment to a landowner in a premises-liability negligence action, notwithstanding similar claims by the plaintiff that her failure to notice an open and obvious condition was attributable to her distraction.  21 N.E.3d 684, 692 (Ill. 2014).  In that case, "the only distraction identified by plaintiff [was] that her attention was fixed on the door and steps of the clinic" in the plaintiff's direction of travel.  *Id.*  Unpersuaded, the Supreme Court of Illinois "conclude[d] that the mere fact of looking elsewhere does not constitute a distraction," notwithstanding the fact that "the record support[ed] that plaintiff was, in fact, looking in that direction, rather than at the defective sidewalk." *Id.*  So too here, where the only ostensible distraction identified by Plaintiff was that she was looking elsewhere, *i.e.*, that she was not looking at the floor because was focused on the other individual in the checkout area.

Moreover, and at a more fundamental level, passing interactions with other customers, of a diverse array of shapes and sizes, are ordinary facets of navigating a New York City retail store, whether in the entrance, the aisles, or the checkout area, and do not, without more, constitute distractions.  *Cf. Weickert* v. *Home Depot U.S.A., Inc.*, 347 Ga. App. 889, 895 (2018) ("The

distraction doctrine contemplates 'moment[s] of stress or excitement,' not everyday commonplace occurrences.").  In an analogous context, the Appellate Division has observed with respect to the "bestial conditions of passenger traffic obtaining in the city of New York during the so-called 'rush hours,'" that members of the traveling public are without remedy for the mere discomfort associated with travel, though an action may lie when "physical injuries are sustained as a result of the maintenance of such conditions" by the transportation authority.  *Broder* v. *N.Y. Consol. R. Co.*, 162 N.Y.S. 1002, 1003 (1st Dep't 1917).  Accordingly, the Court finds that, even accepting Plaintiff's testimony regarding the presence of an additional customer in the checkout area, such a fact is immaterial, as it only supports the conclusion that Plaintiff was looking elsewhere, and cannot, on its own, sustain the broader finding that Plaintiff was sufficiently distracted to have failed to notice the otherwise open and obvious handbasket.  *Accord Bruns*, 21 N.E.3d at 692 ("[T]he mere fact of looking elsewhere does not constitute a distraction."); *see also Tarpon Bay Partners*, 79 F.4th at 220 ("A material fact is one that would affect the outcome of the suit under the governing law." (internal quotation marks and citation omitted)).

Nor does the *Gleyzer* case, the sole authority identified by Plaintiff as support for her argument, compel a different conclusion.  (*See* Pl. Opp. 4 (citing *Gleyzer* v. *SNL Meat & Produce, Inc.*, 24 N.Y.S.3d 157, 157-58 (2d Dep't 2016))). In that case, an employee was positioned on one side of the bakery aisle at a Key Food supermarket, restocking shelves by emptying trays of bread,

22

measuring roughly 5¼ inches tall by 23¼ inches wide, and 21½ inches long, that had been stacked on a dolly, and then stacking the emptied trays on the floor. *Id.* at 157. Surveillance video from the supermarket demonstrated that, "immediately before the accident occurred, the plaintiff had moved toward the middle of the aisle in order to allow a second patron with a shopping cart to pass and had been looking to her left at the second patron before stumbling over the tray, which was low to the ground and to her right." *Id.* at 158. On appeal, the Appellate Division affirmed the denial of the supermarket's motion for summary judgment, finding that "the particular facts of th[e] case … failed to establish that the condition was open and obvious and not inherently dangerous as a matter of law." *Id.* at 158.

By the same token, it is those particular facts that distinguish *Gleyzer* from the instant case. Most notably, the *Gleyzer* court did not find that the mere presence of another customer in the aisle had distracted the plaintiff and prevented her from noticing the open and obvious condition in the aisle. *See* 24 N.Y.S.3d at 157-58. Indeed, nowhere in its opinion does the court discuss distraction at all, belying Plaintiff's suggestion that *Gleyzer* establishes that the presence of another customer is a sufficient distraction to negate an otherwise open and obvious condition. *See generally id.* Nor did the *Gleyzer* court make such a finding with respect to the presence of the employee in the aisle. *See generally id.*; *see also Schoen* v. *King Kullen Grocery Co., Inc.*, 745 N.Y.S.2d 554, 554 (2d Dep't 2002) (granting summary judgment in favor of a supermarket

where a customer tripped on an open and obvious piece of cardboard left on the floor by a stock boy who was unpacking boxes in the same aisle).

Rather, the *Gleyzer* court found that the facts as a whole could not support a finding, as a matter of law, that the stack of emptied trays was open and obvious. *See* 24 N.Y.S.3d at 158. On this topic, however, the conditions at the accident site are markedly different from those in the instant case. *Gleyzer* involved a loaded dolly, a stack of empty trays, and an employee, the combination of which would have constricted the aisle in a way that was different from the condition of the aisle during normal retail hours. *Id.* at 157. When considering that condition alongside the reality of customers navigating the aisle with shopping carts, it was possible for a reasonable customer to have failed to notice the tray on the floor, rendering summary judgment on the issue of openness and obviousness inappropriate. *Id.*

Here, even crediting Plaintiff's testimony, the record reflects only one customer who was checking out at an adjacent register, with another waiting in the checkout area; Plaintiff having an unobstructed view of the aisle; and the handbasket on the ground between Plaintiff and the customer at the register. (*See* Perez Depo. 47:24-51:16 (testifying that the handbasket was located in front of the beverages case in between registers two and three, that the second customer was checking out from register two, such that the handbasket was located between Plaintiff and the second customer); Katz Decl., Ex. 8; *see also* Def. Br. 8). These facts are markedly different from those in *Gleyzer*, and are closer to those in *Bruns*, where the open and obvious condition was located on

the ground in front of the plaintiff, but the plaintiff did not notice the condition because her gaze was directed forward, and not down.  *See Bruns*, 21 N.E.3d at 692.  *Gleyzer* is therefore distinguishable on both the facts and the law, and is of little use to Plaintiff's argument in opposition to summary judgment.

Accordingly, the Court finds that summary judgment on the question of Plaintiff's actual distraction is proper, as Plaintiff has not met her burden to identify a genuine dispute as to any material fact regarding whether the alleged presence of another customer in the checkout area rendered her sufficiently distracted as to negate the otherwise open and obvious nature of the handbasket.

### iii.    Plaintiff Has Not Met Her Burden to Establish That Defendants Maintained an Unreasonably Distracting Premises

Finally, even assuming that Plaintiff had identified any corroborating evidence to survive summary judgment on whether or not she was actually distracted, rather than simply looking elsewhere, Plaintiff's subjective distractedness would not be determinative on whether the handbasket was open and obvious, providing a second, independent basis for summary judgment on the issue.  *See Matteo* v. *Kohl's Dep't Stores, Inc.*, No. 09 Civ. 7830 (RJS), 2012 WL 760317, at *8 (S.D.N.Y. Mar. 6, 2012) ("[A] plaintiff's failure to see a hazard does not necessarily preclude the entry of summary judgment in favor of a landowner." (collecting cases)).  Under New York law, negligence is evaluated from an objective, rather than subjective, standard, under which reasonableness is evaluated against a "community standard rather than an

individual one." *Bethel* v. *N.Y.C. Transit Auth.*, 92 N.Y.2d 348, 353 (1998)

(quoting RESTATEMENT (SECOND) OF TORTS § 283 cmt. *c*).  The relevant analysis

therefore concerns whether "[a] 'reasonable [person] of ordinary prudence'"

would have been distracted in the checkout area, and thus would not have

seen the handbasket on the ground.  *Id.* (quoting PROSSER AND KEETON, TORTS

§ 32, at 173-74 (5th ed)).  Under this approach, the Second Circuit has found

that a landowner may still be liable for an open and obvious condition "where

[i] 'customers would not expect to find the dangerous condition where it is,' and

[ii] 'defendant's displays of merchandise … would foreseeably distract the

plaintiff to such an extent that she could not reasonably have been expected to

observe the condition.'"  *Saltz* v. *Wal-Mart Stores, Inc.*, 510 F. App'x 68, 69 (2d

Cir. 2013) (summary order) (quoting *Michalski* v. *Home Depot, Inc.*, 225 F.3d

113, 120-21 (2d Cir. 2000)); *see also* RESTATEMENT (SECOND) OF TORTS § 343A

cmt. *f* (observing that a landowner's "duty may require [her] to warn the invitee,

or to take other reasonable steps to protect [the invitee] … where the

[landowner] has reason to expect that the invitee's attention may be distracted,

so that [she] will not discover what is obvious").

 Under this standard, Plaintiff has not identified a single fact, beyond the

mere presence of another customer in the checkout area, to support any

finding that a reasonable person would have been distracted and therefore

missed the handbasket on the ground.  Plaintiff gestures vaguely at the

presence of columns in the retail area, and the fact that customers must pass

one another when checking out, but has provided no photographs or other

documentary evidence to substantiate this self-serving testimony.  While
Defendants have provided schematics of the checkout area, and an illustration
of Plaintiff's general direction of travel (*see* Def Br. 8 (citing Mercedes Decl.
¶¶ 8-9)), Plaintiff has made no effort to indicate on those schematics where the
handbasket was specifically located, nor has she delineated her specific path of
travel, nor even identified the specific area in which the incident occurred.  The
Court declines to do so on Plaintiff's behalf.  *See Amnesty Am.* v. *Town of West
Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (noting that Rule 56 "does not
impose an obligation on a district court to perform an independent review of
the record to find proof of a factual dispute"); *cf. Norton* v. *Sam's Club*, 145 F.3d
114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are
considered waived and normally will not be addressed on appeal.").

Moreover, in her deposition testimony, Plaintiff conceded that there were
no hazardous lighting conditions in the checkout area, and that her view of the
aisle was clear.  (*See* Perez Depo. 43:12-24; 51:2-16).  *Cf. Clark* v. *AMF Bowling
Ctrs.*, 921 N.Y.S.2d 273, 274 (1st Dep't 2011) (denying summary judgment
where the dim lighting in the facility and unusual placement of furniture
implicated material questions of fact regarding whether a condition was open
and obvious).  Plaintiff also identifies no distracting merchandise displays in
the checkout area that could support a jury's finding that "a shopper [would
be] ignorant of obvious hazards because she is distracted by the very goods the
store owner wishes her to look at." *Michalski*, 225 F.3d at 120.  Accordingly,
Plaintiff has "failed to make a sufficient showing on an essential element of her

case," and summary judgment is appropriate on the issue of whether the conditions of the checkout area were distracting to a reasonable customer. *Celotex*, 477 U.S. at 323.

Both cases relied upon by Plaintiff for this point are distinguishable. (*See* Pl. Opp. 4 (first citing *Gradwohl*, 896 N.Y.S.2d at 85-86, and then citing *Russo* v. *Home Goods, Inc.*, 990 N.Y.S.2d 95, 96 (2d Dep't 2014))).  In particular, both *Russo* and *Gradwohl* involved dollies left unattended by store employees on retail floors, which dollies are heavy, low to the ground, used by employees for the transportation of merchandise, and not typically found unattended in areas where customers are present.  *See Russo*, 990 N.Y.S.2d at 96 (observing that "the pallet jack was low to the ground and empty, had no distinguishing features, … was not supposed to be left unattended, and was to be used solely by store employees, who were instructed to immediately return the pallet jack to the stockroom after use"); *Gradwohl*, 896 N.Y.S.2d at 85-86 (noting that "the U-boat dolly was dark-colored, approximately six feet long, 15 inches to two feet wide, on wheels, and very low to the ground," and that "the defendant's employees [] testified that unattended U-boat dollies were required to be removed immediately from the merchandise floor").  By contrast, the basket in this case is brightly colored and meant for use by customers throughout the retail location, such that a reasonable customer would expect to find a basket in those customer-facing areas of the Store, even if they might not be on the lookout for a heavy dolly or other type of employee-operated equipment.  *Accord Tagle*, 97 N.Y.2d at 168 (courts may consider "reasonable

expectations of the parties and society generally" in determining whether a landowner's duty exists).

In sum, the Court finds that summary judgment on the issue of openness and obviousness is appropriate, as Plaintiff has failed to raise a genuine issue of material fact sufficient to defeat Defendants' showing that the handbasket was readily observable by the reasonable use of one's senses. *Accord Celotex*, 477 U.S. at 322-23 ("In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." (internal quotation marks omitted))

### b. Plaintiff Has Identified No Genuine Factual Dispute as to Whether the Handbasket Was Inherently Dangerous

A determination that a condition was open and obvious does not end the analysis regarding a landowner's duty to warn, however, inasmuch as a landowner must also warn of open and obvious conditions that are inherently dangerous. *See Varon*, 998 N.Y.S.2d at 434 ("[A] landowner has no duty to protect or warn against an open and obvious condition which, as a matter of law, is not inherently dangerous."). "[W]hether a condition is not inherently dangerous, or constitutes a reasonably safe environment, depends on the totality of the specific facts of each case." *Russo*, 990 N.Y.S.2d at 96. "In assessing inherent dangerousness, a court may consider factors including the inherent nature of the condition at issue, evidence of prior accidents, whether there is a statutory violation, the frequency of inspections, photographs

depicting the condition, and expert testimony." *Chaney*, 115 F. Supp. 3d at 386-87 (citations omitted).

While the issue of inherent dangerousness is often a jury question, "the landowner may establish a *prima facie* entitlement to judgment as a matter of law where the evidence shows that the condition was 'not inherently dangerous.'" *Chaney*, 115 F. Supp. 3d at 386 (quoting *Varon*, 998 N.Y.S.2d at 434). "If, in response, the plaintiff fails to raise 'triable issues of fact as to whether the condition was inherently dangerous,' the Court may resolve this issue as a matter of law." *Id.* (alteration adopted) (quoting *Russo*, 990 N.Y.S.2d at 97). Such is the case here, where all evidence neatly aligns with those cases finding, as a matter of law, that the conditions at issue were not inherently dangerous.

Beginning with the facts, the same evidence establishing that the handbasket was open and obvious also supports the Court's finding that the handbasket was not inherently dangerous. It is undisputed that the yellow handbasket was placed on the ground in the checkout area, adjacent to cash register number two. (*See* Perez Depo. 33:12-38:18). The checkout area was well-lit and uncluttered, and did not feature any distracting merchandise displays. (*See id.* at 43:12-24, 51:2-16). Furthermore, customers who had reached the checkout area of the Store would reasonably expect to encounter a higher concentration of handbaskets there, given the presence of customers waiting to pay for their merchandise. *Matteo*, 2012 WL 760317, at *7, 9 (observing that whether a condition was inherently dangerous may depend on

whether customers reasonably expected to encounter it in the location at issue); *cf. Torres* v. *State*, 795 N.Y.S.2d 710, 711 (2d Dep't 2005) ("[L]andowners will not be held liable for injuries arising from a condition on the property that … could be reasonably anticipated by those using it." (citation omitted)).

These facts depict exactly the type of "spare and unremarkable circumstance[]" that comes up well short of the showing necessary to support a jury's finding of inherent dangerousness.  *Chaney*, 115 F. Supp. 3d at 389 (remarking that a finding of inherent dangerousness in such a scenario "would effectively permit a finding of inherent dangerousness as to virtually any readily visible item of personal property, food, or litter that a customer may have placed on the floor … and on which a person could potentially trip").  Indeed, the mere presence of a handbasket in a retail area, without more, has frequently been found to be not only open and obvious, but also not inherently dangerous, such that summary judgment is appropriate.  *See, e.g.*, *Rosa* v. *Food Dynasty*, 763 N.Y.S.2d 756, 756 (2d Dep't 2003) (granting summary judgment where "[t]he plaintiff tripped and fell over one of [defendant's] scattered [shopping] baskets" outside of its store); *Sewer* v. *Fat Albert's Warehouse, Inc.*, 652 N.Y.S.2d 102, 103 (2d Dep't 1997) (granting summary judgment where plaintiff "stepped on a wire shopping basket which was beneath [clothing] racks" in defendant's store); *Neiderbach*, 868 N.Y.S.2d at 92 (granting summary judgment on the grounds that a "blue plastic crate … about 15 inches high and 12 inches wide" was an open and obvious, and not inherently dangerous, condition); *cf. Boyle* v. *Pottery Barn Outlet*, 985 N.Y.S.2d

291, 291 (2d Dep't 2014) (affirming lower court's finding that a "cardboard box
in the aisle of a store owned by the defendant [was] … not inherently
dangerous as a matter of law").

Nor is the fact that a handbasket could generally pose a tripping hazard
indicative of its inherent dangerousness, as the "general awareness that a
condition may pose a danger under certain circumstances is insufficient by
itself to establish that a particular instance of such a condition was inherently
dangerous." *Glassberg* v. *Staples the Off. Superstore E., Inc.*, No. 08 Civ. 2132
(KAM) (JMA), 2010 WL 3924682, at *5 (E.D.N.Y. Sept. 13, 2010) (citing
*Piacquadio* v. *Recine Realty Corp.*, 84 N.Y.2d 967, 969 (1994)), *report and
recommendation adopted*, No. 08 Civ. 2132 (KAM) (JMA), 2010 WL 3909206
(E.D.N.Y. Sept. 29, 2010).  Where courts have denied summary judgment on
the inherent dangerousness of similarly-sized handbaskets, they have done so
under circumstances in which a plaintiff has brought forward evidence of
compounding factors, beyond the mere existence of the handbasket, that
rendered the handbasket more dangerous.  For example, in *Castro* v. *Village
Super Mkt. of NY, LLC*, the Appellate Division found a dispute of fact remained
as to whether "[a] shopping basket … sitting on the floor, low to the ground,
next to a large cart with other shopping baskets piled on top of it … may well
have served as a 'trap for the unwary.'"  181 N.Y.S.3d 27, 28 (1st Dep't 2022).
In that case, the plaintiff had adduced "photographs and surveillance footage of
the accident," which evidence indicated that "[t]he shopping basket was placed

on the floor near the customer service podium, and as plaintiff was talking to an employee there she stepped to her left and tripped over the basket." *Id.*

In this case, however, Plaintiff relies on only on two photographs, taken by her husband after the incident had occurred, to portray the conditions of the checkout area. (*See generally* Katz Decl., Ex. 8). At best, these photographs depict one handbasket with items in it, belonging to a customer checking out after the incident had taken place, and one empty handbasket. (*Id.*; *see* Mercedes Depo. 35:22-36:7 (testifying that there were no individuals in line when she responded to the scene of the incident)). Neither photograph indicates that either handbasket was obscured from view, whether amidst a pile of other handbaskets or behind some other object. (*Id.*). Quite the opposite, and as discussed above, the photographs confirm that the yellow handbaskets appear conspicuous against the gray floor and the black merchandise shelves lining the aisle, and thus are more like those baskets in *Rosa*, *Sewer*, and *Neiderbach*, and less like the basket on the floor adjacent to the haphazard pile of baskets in *Castro*. Moreover, both photographs are close-up depictions of the handbasket; neither provides a wider depiction of the handbasket and its positioning in the aisle, rendering the photographs of limited use in understanding how the handbasket would have appeared at the time of the incident.

*Belogolovkin* v. *1100-1114 Kings Highway LLC*, an older case in which the Appellate Division found a question of fact as to "whether Duane Reade employees created a dangerous condition by allegedly placing [a] subject

33

shopping basket near the plaintiff," is similarly distinguishable.  825 N.Y.S.2d

543, 544 (2d Dep't 2006).  That case involved "Duane Reade employees moving

and filling shopping baskets and placing these baskets on the floor," over one

of which baskets the plaintiff tripped.  *Id.*  Accordingly, *Belogolovkin* involved

the disorganized placement of numerous baskets by store employees, akin to

the pile of baskets in *Castro* and dissimilar from the single basket in the

instant case.  *Id.*

Ultimately, the Court finds that summary judgment on the issue of the

duty to warn is appropriate, as the evidence, even considered in Plaintiff's

favor, is simply too thin to support a reasonable juror's finding that the

handbasket, under these circumstances, was inherently dangerous.  *See Gallo*

v. *Prudential Residential Servs., Ltd. P'ship*, 22 F.3d at 1223-24 ("When no

rational jury could find in favor of the nonmoving party because the evidence to

support its case is so slight, there is no genuine issue of material fact and a

grant of summary judgment is proper." (internal citations omitted)); *see also*

*Hayut* v. *State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (noting that

judgment as a matter of law is warranted where a plaintiff "has failed to make a

sufficient showing on an essential element of her case with respect to which

she has the burden of proof" (citation omitted)).

### 2. Plaintiff Has Failed to Identify a Genuine Dispute of Fact That Defendants Breached Their Duty of Care

The Court next considers the question of whether Defendants breached

their duty of care.  Here, Defendants maintain that summary judgment is

appropriate, as the openness and obviousness of the handbasket also

precludes any finding that Defendants failed to maintain reasonably safe premises, and because Plaintiff cannot identify any evidence that Defendants either affirmatively created the hazardous condition or had actual or constructive notice of the condition.  (*See* Def. Br. 14-24).  For the reasons set forth below, the Court finds Defendants to be correct on both points.

### a.   New York Law Imposes No Duty of Care With Respect to Open and Obvious Conditions That Are Not Inherently Dangerous

As a threshold matter, while the duty to warn is not generally coterminous with the duty of care, New York courts have found that, where a property's condition that caused a visitor to trip and fall is both "open and obvious" and "not inherently dangerous as a matter of law," the property owner "did not breach its duty to maintain its property in a reasonably safe condition."  *Plis* v. *N. Bay Cadillac*, 773 N.Y.S.2d 451, 452 (2d Dep't 2004); *Varon*, 998 N.Y.S.2d at 434 (observing that "a landowner has a duty to maintain its premises in a reasonably safe manner ... [but] has no duty to protect or warn against an open and obvious condition which, as a matter of law, is not inherently dangerous").  "In such circumstances, the condition which caused the accident cannot be fairly attributed to any negligent maintenance of the property."  *Cupo*, 767 N.Y.S.2d at 43; *cf. Glassberg*, 2010 WL 3924682, at *6 (granting summary judgment, where the at-issue condition was open and obvious, and not inherently dangerous, such that it "did not constitute an unsafe condition" necessary to finding that defendant breached its duty of care).

Having already concluded that the handbasket was open and obvious and not inherently dangerous in its assessment of Defendants' duty to warn, the Court follows suit with respect to Defendants' duty of care.  *See Schiavone* v. *Bayside Fuel Oil Depot Corp.*, 942 N.Y.S.2d 585, 585-86 (2d Dep't 2012) (affirming grant of summary judgment on the grounds that a landowner "*has no duty to protect against* or warn about open and obvious conditions that are not inherently dangerous" (emphasis added)); *Rao-Boyle* v. *Alperstein*, 844 N.Y.S.2d 386, 387 (2d Dep't 2007) (same); *see also Bellini* v. *Gypsy Magic Enters., Inc.*, 978 N.Y.S.2d 73, 74-76 (2d Dep't 2013) (reversing trial court's denial of summary judgment because the defendant established its *prima facie* case that the complained-of condition was open and obvious and not inherently dangerous, and plaintiff had not raised a triable issue of fact refuting the *prima facie* case); *Nelson* v. *40-01 N. Blvd. Corp.*, 943 N.Y.S.2d 216, 217 (2d Dep't 2012) (same); *Losciuto* v. *City Univ. of New York*, 914 N.Y.S.2d 296, 297-98 (2d Dep't 2011) (same); *Neiderbach*, 868 N.Y.S.2d at 92 (same).

### b. Defendants Neither Created Nor Had Notice of the Condition

Even assuming, *arguendo*, that Plaintiff could generate a triable dispute concerning whether the handbasket was open and obvious and not inherently dangerous, Defendants are correct that summary judgment remains appropriate, because Plaintiff cannot establish that Defendants either created the defective condition or had actual or constructive notice of that condition. (*See* Def. Br. 14).  At this step in the analysis, "[t]o succeed on a premises liability claim alleging any injury caused by a defective condition, the plaintiff

must demonstrate that the defendant either created the defective condition, or had actual or constructive notice thereof for such a period of time that, in the exercise of reasonable care, it should have corrected it." *Tenay*, 281 F. App'x at 13 (internal quotation marks omitted).

As an initial matter, Plaintiff does not rebut Defendants' position that the record, considered as a whole, cannot support any finding that Defendants either affirmatively created the condition or had actual notice of the condition. (*Compare* Def. Br. 16-24, *with* Pl. Opp. 1-3).  Nor could Plaintiff, as the Court's own review of the record finds only speculative testimony from Plaintiff as to who was responsible for the placement of the at-issue handbasket in the checkout area, and no testimony from any Store employees establishing their actual awareness of said handbasket.  (Perez Depo. 42:7-43:4; *see also* Mercedes Depo. 17:12-20:25; *see generally* Rivera Depo.).  Summary judgment is therefore appropriate on the issue of affirmative creation and actual notice.

Left only with constructive notice, Plaintiff maintains that issues of fact remain as to whether the presence of handbaskets in the checkout area was a recurring condition, upon which constructive notice can be found.  (Pl. Opp. 1-3).  Under this theory, "a plaintiff can establish constructive notice through evidence that the defendant was aware of an ongoing and recurring unsafe condition which regularly went unaddressed."  *Watts* v. *Wal-Mart Stores E., LP*, No. 16 Civ. 4411 (KMK), 2018 WL 1626169, at *5 n.7 (S.D.N.Y. Mar. 29, 2018) (internal quotation marks and alteration omitted) (citing *Mazerbo* v. *Murphy*, 860 N.Y.S.2d 289, 291 (3d Dep't 2008)); *see also Talavera* v. *N.Y.C. Tr. Auth.*,

836 N.Y.S.2d 610, 610 (1st Dep't 2007) ("A plaintiff may satisfy [her] burden on notice by producing evidence that an 'ongoing and recurring dangerous condition existed in the area which was routinely left unaddressed by the landlord.'" (quoting *O'Connor-Miele* v. *Barhite & Holzinger*, 650 N.Y.S.2d 717, 719 (1st Dep't 1996))).  In other words, Plaintiff must satisfy three elements to establish constructive notice: (i) the condition was ongoing and recurring; (ii) the condition was unsafe or dangerous; and (iii) the condition regularly went unaddressed.

While Plaintiff has arguably satisfied the first element — *i.e.*, the presence of a recurring condition — through Mercedes's admission that the presence of the handbaskets near the checkout counter was a daily occurrence, Plaintiff comes up short on the remaining two.  (Mercedes Depo. 32:4-6).  Indeed, in the same breath that she testified as to the presence of handbaskets in the checkout area, Mercedes also testified that Store employees would regularly pick those baskets up.  (*Id.* at 32:4-6 ("[It] is a daily kind of thing.  Customers leave those baskets in the floor, and I would pick them up."); *see also id.* at 32:7-14 (testifying that all employees, including those working behind the cash registers, "have the same responsibility of picking up those baskets")).  Her testimony thus belies any conclusion that the condition regularly went unaddressed, leaving Plaintiff short of the mark with respect to the third element.  Nor has Plaintiff identified other sources contradicting Mercedes's testimony to that end, beyond Plaintiff's own testimony that she recalled having seen handbaskets in the vicinity of the

checkout area in past visits, which testimony is insufficient to create a dispute of material fact.  (*See* Pl. 56.1 ¶ 26 (citing Perez Decl. ¶ 5)).  *See Manzione* v. *Wal-Mart Stores, Inc.*, 744 N.Y.S.2d 466, 467 (2d Dep't 2002) (finding that plaintiff's conclusory allegation that hangers on storeroom floor were recurring hazard was insufficient to raise issue of fact as to recurring dangerous condition).  Finally, for the reasons set forth above, Plaintiff cannot satisfy the second element, as she has not identified any genuine factual dispute regarding the dangerousness of the handbasket either as a singular item or as a recurring condition.  On these facts, therefore, a reasonable jury could find only that Defendants had a mere "'general awareness' of a dangerous condition on the premises [that] is not legally sufficient to charge a defendant with constructive notice of the particular condition that caused the plaintiff's injury."  *Gonzalez*, 299 F. Supp. 2d at 193 (citing *Gordon* v. *Am. Museum of Nat. Hist.*, 67 N.Y.2d 836, 837-38 (1986)).

Plaintiff's proffered caselaw does not change this outcome.  Beginning with *Kivlan*, the Court notes that several courts in the Second Circuit have distinguished that case on similar facts to the ones at hand.  *See Kivlan* v. *Dake Bros. Inc.*, 680 N.Y.S.2d 293 (3d Dep't 1998).  Judge Koeltl, in *Gonzalez*, observed that *Kivlan* applies only when "the plaintiff raises an issue of fact by presenting evidence that [her] injury was caused by a specific reoccurrence of a recurring dangerous condition, and where the condition is apparently dangerous."  299 F. Supp. 2d at 195; *see also Ricci* v. *Wal-Mart Stores E., LP*, No. 16 Civ. 6920 (JCM), 2018 WL 4308556, at *10 (S.D.N.Y. Sept. 10, 2018) ("A

'recurrent condition' theory 'requires evidence that an ongoing and recurring *dangerous* condition existed in the area of the accident which was routinely left unaddressed by the landlord.'" (emphasis added) (quoting *Uhlich* v. *Canada Dry Bottling Co. of N.Y.*, 758 N.Y.S.2d 650, 651 (1st Dep't 2003))).  Indeed, the recurring condition in *Kivlan*, an oil spill in the parking area of defendant's convenience store and gas station, is qualitatively different from the open and obvious handbasket in this case.  680 N.Y.S.2d at 293.  By contrast, in *Gonzalez*, as here, the recurring condition at issue was not apparently dangerous, but rather was open and obvious.  *Id.*

Next, in *Ellison*, Judge Donnelly observed that *Kivlan* is of limited persuasiveness where the facts establish that the landowner had a policy of addressing the recurring condition, "thus negating the plaintiff's theory that a recurring hazardous condition went unaddressed."  *Ellison* v. *Stop & Shop Supermarket Co. LLC*, No. 21 Civ. 22 (AMD) (LB), 2022 WL 4238266, at *7 & n.14 (E.D.N.Y. Sept. 14, 2022).  This case presents similar facts, as Mercedes testified that Store employees had a regular practice of collecting the handbaskets that were discarded in the checkout area.  (Mercedes Depo. 32:4-14).

*Black* v. *Kohl's Department Stores* is likewise distinguishable, as in that case the plaintiff's version of events was supported by "[t]wo nonparty customers who frequented defendant's store approximately once per week for several years[, who] provided affidavits on plaintiff's behalf."  914 N.Y.S.2d 469, 471 (3d Dep't 2011).  This testimony, the Appellate Division found, permitted a

finding that the purse department in which plaintiff fell was "in continual disarray … [and] always appeared like it had not been cleaned in a while," which finding was, in turn, "sufficient to meet [plaintiff's] burden of raising a factual question concerning whether the recurring nature of the situation put defendant on constructive notice that a dangerous condition existed in its store." *Id.* The same cannot be said for this case, where Plaintiff's conclusory assertions are simply too thin a basis to support a reasonable juror's finding that the checkout area was as cluttered as the purse department in *Black*. *Manzione*, 744 N.Y.S.2d at 467 ("In the instant case, the injured plaintiff's affidavit contains conclusory allegations and hearsay, which are insufficient to raise a triable issue of fact."). Nor is Plaintiff successful in her invocation of Mercedes's testimony, as, for the reasons discussed above, that testimony establishes that Defendants' employees regularly addressed the presence of handbaskets in the checkout area, thereby negating an element necessary to the finding of a recurrent dangerous condition.

Ultimately, just as Plaintiff is unable to marshal sufficient facts to create a genuine issue of material fact as to the issues of openness, obviousness, and inherent dangerousness of the handbasket, Plaintiff provides no factual foundation to support any finding that Defendants were on constructive notice regarding the presence of the handbasket in the checkout area, and therefore Defendants are entitled to summary judgment with respect to their duty of care. *See Tenay*, 281 F. App'x at 13 (affirming grant of summary judgment

where "the record contains no evidence establishing a genuine issue of material fact with respect to [] actual notice or constructive notice").

## CONCLUSION

For the reasons enumerated herein, Defendants' motion for summary judgment is GRANTED.  The Clerk of Court is directed to terminate all pending motions, including the pending motion at docket entry 31, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:   February 29, 2024
      New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

42